# Love v. Tioga Trust Company, Appellant.

*Courts—Jurisdiction—Municipal Court of Philadelphia—Banks and banking—Dishonor of check.*

The Municipal Court of Philadelphia has jurisdiction of an action of trespass for damages to a depositor's credit by reason of a bank's nonpayment of his check, where the amount claimed in the statement is $1,500. Such a suit is an action "for damages for personal injuries" within the meaning of the Act of July 12, 1913, P. L. 711, creating the Municipal Court.

In an action by a depositor to recover $1,500 from a bank for dishonoring a check for $42 where it appears that through a mistake of the clerk plaintiff's balance should have been $59.90 instead of $38,90 when the check was presented, it is reversible error for the court to refuse to admit evidence, the tendency of which is to show that plaintiff himself had repeatedly in the past so conducted his financial transactions with the bank that the latter had been forced to reject checks drawn by him in excess of the sum to his credit in the bank.

Such a judgment on a verdict for $1,200 will be reversed and a new venire awarded.

Argued Oct. 2, 1917. Appeal, No. 120, Oct. T., 1917, by defendant, from judgment of Municipal Court, Philadelphia Co., May T., 1916, No. 462, on verdict for plaintiff in case of Max Love v. Tioga Trust Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Trespass to recover damages for alleged injury to plaintiff's credit caused by dishonoring his check. Before KNOWLES, J.

The opinion of the Superior Court states the facts.

When Edward C. Snyder, Jr., treasurer of defendant was on the stand, he was asked this question:

"By Mr. McManus:

"Q.—Let me ask you another question; were the checks of Mr. Love refused payment formerly for other amounts?

"(Objected to.)

"A.—Yes.

"Mr. Fow: Wait a minute.

"The Court: When the attorney objects, don't answer until the court has a chance to rule.

"(Objection sustained.)

"(Exception for defendant.)"    (8)

When Charles W. Reuter, president of defendant, was on the stand he was examined as follows:

"Q.—What made it necessary to carry a check over night?

"A.—Because he (meaning plaintiff) was overdrawn; he was overdrawn twenty times.

"The Court: Even if he was overdrawn, the bank comes in here and says very frankly to this jury that he wasn't overdrawn on this occasion, but that it was a mistake in bookkeeping. That is all there is to this case."

"Mr. McManus: Will your honor grant me an exception?

"Mr. McManus: That is all.

"(Exception for defendant.)"    (10)

Verdict and judgment for plaintiff for $1,200. Defendant appealed.

*Errors assigned* were various instructions and (8, 10) rulings on evidence as above, quoting the bill of exceptions.

*Harvey McCourt*, with him *Frank A. McManus* and *Charles E. Beury*, for appellant.—The Municipal had no jurisdiction: Wilson v. Pullman Co., 65 Pa. Superior Ct. 499; Bell v. Moss, 5 Wharton 189.

It would seem most reasonable that the bank should have been permitted to show, as it endeavored upon the trial of the case to show, but was prevented from showing, that plaintiff's condition was such that his financial credit and standing were not seriously impeached.

*F. Carroll Fow*, for appellee, cited as to the amount of the verdict: Weiner v. North Penn Bank, 65 Pa. Superior Ct. 290; White v. Columbia & Montour Electric Ry. Co., 215 Pa. 462; Jones v. Pennsylvania Co., 60 Pa. Superior Ct. 438.

OPINION BY HEAD, J., December 13, 1917:

The facts material to the determination of the legal questions involved in this appeal may be briefly stated. The plaintiff who sues as "Max Love" had a small deposit account in the defendant trust company in the name of "M. Love." He had a brother who had a similar account in the same bank in the name of "A. Love." The bank had mistakenly charged a check for $21 drawn by the latter to the account of the former. As a consequence, the balance due this plaintiff on a certain day appeared to be but $38.90; in fact, it should have been $59.90. The result of this error was the refusal of the bank to pay a check for $42 drawn by the plaintiff to the order of one "S. Kogen." To recover damages for the alleged injury to his financial reputation in the business world, the plaintiff brought this action. In his statement he laid the sum demanded as $1,500, and on the first trial he obtained a verdict for $1. A new trial having been granted, the case came on again and the plaintiff secured a verdict for $1,200, upon which judgment was entered. This appeal followed.

The first contention advanced by the able counsel for the appellant is that the Municipal Court had no jurisdiction. If it could be correctly held that the right of the plaintiff, which had been invaded, was a property right rather than a personal one, the contention would be supported by our case of Wilson v. Pullman Co., 65 Pa. Superior Ct. 499. We cannot, however, accept this conclusion as a sound one. The case at bar more nearly aligns itself with Lerner v. Felderman, 64 Pa. Superior Ct. 287. We there pointed out that an action to recover damages because of a malicious prosecution was

an action "for damages for personal injuries" within the meaning of the statute creating the Municipal Court and defining its jurisdiction. An examination of an extensive line of authorities in other jurisdictions, leads to the conclusion that the soundest reasoning and the most satisfactory authority support the view we now adopt. The controlling principle was well stated in Johnson v. The Bradstreet Company, 87 Georgia 79. There Mr. Justice LUMPKIN, reviewing many standard authorities, including Blackstone's Commentaries, Cooley on Torts, and Pollock on Torts, determined it was still true the right of personal security included protection to one's reputation, along with security of life, limb, body and health. We quote from the opinion: " 'Person' is a broad term and legally includes not only the physical body and members, but also every bodily sense and personal attribute among which is the reputation a man has acquired. Reputation is a sort of right to enjoy the good opinion of others, and is as capable of growth and real existence as an arm or a leg." The same question was again considered and discussed in Times Democrat Publishing Company v. Mozee, 136 Fed. Rep. 761, in the Circuit Court of Appeals of the United States. In the opinion of the court many cases were analyzed, and the Georgia case, to which we have referred, was cited and quoted from with approval. The learned court sums up its conclusion in this language: "In the construction of the statutes of the United States and of the several states where the terms 'injury to the person' and 'personal injuries' have been construed, the great majority of the decisions of the higher courts and nearly all of the intelligent reasons given, have been to the effect that libel is a personal injury." We are of opinion the Municipal Court had jurisdiction, and its judgment could not be reversed on the first ground advanced.

We turn then to the alleged trial errors complained of in the eighth, ninth and tenth assignments. They all result from the refusal of the learned trial judge to

admit evidence, the object and purpose of which were to show the plaintiff's financial reputation was not so commercially valuable as he estimated it to be.   The tendency of the evidence offered was to prove that the plaintiff, himself, had repeatedly in the past so conducted his financial transactions with the bank that the latter had been forced to reject checks drawn by him in excess of the sum to his credit in the bank.   We are not able to perceive why such evidence would not be pertinent and helpful in ascertaining the real commercial worth of that which he claimed to be of such serious financial value to him.   It was long ago said by one of the justices of the Supreme Court of Pennsylvania that it was both sound sense and sound law to hold that the commercial value of a barrel of musty flour could not be equal to that of a barrel of sound flour.   We feel constrained to sustain the eighth, ninth and tenth assignments of error.

Were there, however, nothing else in the case, we would feel it to be our duty to sustain the fourth assignment which complains that the verdict was excessive. As we view the record, it was clearly far beyond what could fairly be called compensatory damages for any injury shown..   It is true as we have said before that, under the law as it has been declared to be in Pennsylvania, a plaintiff in such a case may recover more than nominal damages, to wit: substantial damages, even though he may be unable to prove any special damage resulting directly from the injury complained of.   But we also pointed out that in the case of a mistake where there was no element of malice or wilful negligence, there was not and there could not be any element of punitive damages.   We suggested also that under circumstances such as this record presents, the trial courts were visited with the responsibility of seeing that no recovery in an undue amount should be tolerated.   Our experience within the last two or three years forbids us to close our eyes to the fact there appears to be afoot an

idea that under conditions here present, a jury is at liberty to dip as deeply as it may choose into the coffers of a bank, even if their verdict should give to a plaintiff a sum wholly outside the limits of any actual injury sustained by him.   We are strongly averse to giving our sanction to such verdicts and judgments, and it is to be hoped that hereafter this court will not be called upon to exercise its power to set aside such verdicts and award a new trial to the end that substantial justice may be done.

The judgment is reversed and a venire facias de novo awarded.